2 for the morning, please. Case number 22-1106 and case number 22-2368, both from Eastern Missouri, United States v. Arondo Harris.  Good morning, Your Honors. May it please the Court, my name is Michael Gross. I represent the appellant, Arondo Harris. Mr. Harris' brief raises several issues. It is my intention to focus on two unpreserved issues that arise from the closing argument for the government, but I don't mean to suggest that any diminished sense of the value of the other issues. All five of these issues were significant from my point of view. The summation issues were two distinct arguments made by counsel for the government. The first argument that counsel made suggested to the jury, told the jury, that the defendant had a burden of proof in the case. What counsel said was, I get to talk twice because I have a higher burden. Higher is a relative term, it has to refer to something that is lower. It could refer to, I have a higher burden than in a civil case, so I get to argue twice, except you get to argue twice in a civil case also if you are the plaintiff. So the only other thing she can be referring to is I have a higher burden than the defendant. Could it be, I mean we are splitting hairs here, but could higher be, I have beyond a reasonable doubt and the other side has nothing? And that is technically higher. You are right that the more natural reading is probably a relative reading, but it is a possible reading. It is certainly a possible reading, but in the context, because of the significance of the burden of proof, I think this has to be seen. Was the jury advised at other times during the trial that the burden of proof was beyond a reasonable doubt on the government? I am sorry, I didn't hear you. Was the proper burden ever told to the jury in another context? I mean my recollection is the court instructed the jury on the proper burden. The court did instruct the jury that the government bore the burden of proof beyond a reasonable doubt. The court didn't tell the jury anything about the defendant's burden because the defendant has none. Even if the court had told the jury that the defendant has no burden, the prosecutor has a position of special trust with the jury and has no business suggesting to the jury that the defendant has a burden. In this case or a case like this, that is especially important because this was a close case. I would consider it a proverbial close case. The government undertook to prove a state of mind and it is a fine line between the state of mind that the government sought to prove and that the jury found to have been proved beyond a reasonable doubt and a state of mind that would not have been a guilty state of mind. The instruction for willful blindness that the district court gave to the jury was great on this issue. In light of what Judge Kobus asked and given that this was a single remark and given that you could read it as not being inconsistent with the burden of proof, I wonder whether the answer, since we are in plain error land, is just that his substantial rights were not affected. I think that his most substantial right was unquestionably, it is not reasonable to question from my point of view, that his most basic right in this trial was affected. Do you have a case that has been reversed with facts like this? I am not recalling a case now. I would be happy to look and suggest a case to the court in a Rule 28J letter. What I have is cases that say that it is, and it is cited in the brief, that it is, I believe this was, I am not going to recall the name of the case, but it is cited in the brief. To be plain error, wouldn't there need to be something that would have had precedential effect that would have put everybody on notice or at least make it apparent that the conduct here was not permissible? If that was the case, then you could never have a new form of argument in this context, a new form of argument by the government that amounts to plain error if it has to have happened before. It doesn't necessarily have to be, but I am just curious if there is, if there is something out there that makes this plainly erroneous. I will unless the court tells me not to look for a case that answers that question. What I was saying in response to Judge Strauss' question is that the right, the fundamental right that was affected is he is presumed innocent and he has no burden of proving anything. In this case, this fine line that the instruction drew was if he was merely careless or negligent, then he is innocent. But if he took affirmative action to avoid knowing, then he is guilty. It is willful blindness. There is a difference between just being careless and being willfully blind. One way he is not guilty, the other way he is. The jury may have wanted him to prove, to disprove something. They may have wanted him to come up with more than he came up with. He had no burden to do that. The jury needed to have no doubt that the burden was on the government alone in this case and that Mr. Harris had no burden at all. The other summation issue in the case occurred when the government, in its closing argument, told the jury that they needed to convict him to hold him to account for what he had done, which is fair enough. But they also needed to convict him to protect the community, protect themselves and the community from the future crimes he would commit if he wasn't convicted. That you cannot do. I believe the authority for that was this Court's Johnson opinion. The prosecutor is not allowed to urge conviction on the basis of future crimes. That was unequivocally done in this case. What this Court has held is if there is any chance, any reasonable probability that improper argument had an effect on the jury's decision, then reversal is required. Counsel, are you familiar with our OB case, OBI, a 2020 case? There the government said, now comes the justice. Justice for Little Rock, justice for the community, justice for these four people sitting here who suffered through that night. They are justice. This is the only chance to hold them accountable and that is what I am asking you to do. This looks a lot like what happened in OB, except maybe not even as inflammatory as what happened in OB. I am not familiar with the opinion. I apologize for that. What I heard in the excerpt that the Court read didn't say anything about holding them accountable for future crimes, preventing future crimes. That is my point. What the prosecution cannot do is tell the jury, convict this guy in order to keep him from committing future crimes. That is exactly what counsel told the jury in this case. Because it is a closed case, the improper argument matters more than it would matter. It doesn't take as much even for plain error when the argument is improper in a closed case as in a case where the proof of guilt is overwhelming. I have a little time left. Actually, the one I am most interested in. I want you to be able to control your time. This is the loss. I thought the loss presented a really tough issue. I would like to hear from you on that. I am happy to talk about it. I am fascinated by Zillow and Realtor.com. Those are websites that to me exist to gin up commissions for real estate brokers and salesmen. Zillow, I think they are getting out of the business now, but as the prices were going crazy over the last couple of years, real estate Zillow got into the real estate business. The self-interest of those websites in justifying high prices, therefore higher commissions, is one consideration in its own right. I think the undeniable, the most difficult part of the issue for me is that this is an algorithm. These values were determined on Realtor.com by Realtor.com's algorithm, which nobody understands. You would admit that calculation doesn't have to be precise, right? Certainly, there is some relationship between Zillow and Realtor.com and the actual market price. I am concerned about the timing issue, the 2019 versus the 2021. Could you explain the factual record? I thought there were some substantial upgrades and renovations that were done during that time period. Am I reading the record correctly? I think the renovations and improvements happened in 2018. It happened when Mr. Harris bought the property. His livelihood was buying uninhabitable property. The defense expert said the three properties were altogether worth $23,000, right? That's correct. Did that include renovations? No, she was talking about the value at the time of the crime. At the time of the crime, okay. Did the district court specifically consider the value of the renovations and determine when the loss occurred? The district court didn't state exactly where he was getting the value from. I believe he said he was going to sustain the objection in part. The government's valuation of the Realtor.com valuation, I believe, was $160,000. The district court came up with $153,000. Where he got from the Realtor.com number to the $153,000, I can't tell from the record. Just on that point, did the district court suggest that it had looked at Realtor.com that day? Or was it going backwards? Did the district court or the experts try to look at it in 2018 or 2019 when he bought the property? There is no indication that the Realtor.com valuation was a 2019 valuation. No indication at all. As best we could tell, the Realtor.com valuation was a current valuation, 2021, I believe. Part of Mr. Harris' argument was a 2021 algorithmic valuation that couldn't conceivably have taken into account anything inside the house. Counsel, how did it come to pass that these websites became the source for the determination of the value of the property? The government chose not to have a person evaluate. Was there any back and forth between the parties to say once the government says let's use this website, the defense says no, that's not accurate? Was there any discussion with the court about what would be an appropriate source for valuation? Mr. Fine was adamant from the start as soon as the pre-sentence report came back with a Realtor.com valuation that that was an inappropriate basis for determining fair market value. And Judge Cobey said you certainly don't have to have precision. I couldn't agree with that more. But you do have to have fair market value. And there was a way to prove value at the time that the crime was committed. There was a way to prove value before and after the improvements. There was a way to prove value in 2021 also. So the government argues in their brief to this court that there were additional elements of loss that could have gone into the calculation, loss of use. There were real estate taxes paid during the time period. Do you agree that those are permissible in calculating the loss? Yes, Your Honor. I just think this was a loss valuation based on fair market value and based on just the Realtor.com valuation. So you're saying the district court didn't actually consider those issues? There's no indication that it did. That evidence wasn't presented in the context of the valuation. I'm way into my rebuttal time, so thank you, Your Honors. Thank you, Mr. Gross. Mr. Dunkle. Thank you, Your Honor. May it please the Court. My name is Jason Dunkle and I'm representing the United States of America today. I would like to start by focusing on the allegations regarding the errors in the summation. The district court did not plainly err when it did not take any curative action in response to those statements. Those statements that the prosecutor made during the closing argument were in response to arguments that were made by the defense attorney inviting the jury to exercise jury nullification powers, arguing that this was just a civil matter. But it goes beyond just saying that it was a civil matter. The tone of the defense's arguments in that summation was that this was just sort of a cost of doing business, that Mr. Rondo-Harris is buying property and selling property and sometimes you accidentally buy property with a forged deed that the homeowners had no participation in selling. And he suggested that the appropriate remedies were for him to receive compensation for the improvements that he made from those victim homeowners. By showing no remorse and by arguing that way, he is encouraging the jury to nullify. But more importantly, he is indicating that that is his normal course of business and that his behavior is not going to change. So he is inviting the alleged error in this case. Do you think the comment about the burden of proof would be inappropriate in the absence of the context you just described? So I do believe that the alleged error regarding the burden of proof is unrelated to that invited error. It's a separate issue in my mind. And I would note for the Court that in the United States v. Hernandez case, there was an issue where there was an allegation that the government misstated the burden of proof. And in that case, the Court found that the jury instructions, the default jury instructions, and the counsel's later arguments regarding the burden of proof in the case did cure that issue. And that's what we have in this case. The jury was instructed on the presumption of innocence. The jury was instructed on the burden of proof. And even though there is that one misstatement early on where the prosecutor used the word higher rather than the word high, she does later on refer to the presumption of innocence and the burden of proof. And so I think that we're squarely in the Hernandez case here, where even if that word higher instead of high is an impropriety, it is not plein air. And the Hernandez case was a plein air case. But you don't dispute that the law is such that prosecutors should not be telling jurors to strike a blow for the community, so to speak? That is a correct statement of the law, Your Honor. They can ask for the jury to vindicate the victims, the four victims in this case, but they should not be asking to vindicate a community interest. That would be the Johnson case asking, you know, incorporating the war on drugs into the closing argument. So it's the government's position that it was definitely objectionable and potentially error for the district court not to have? Well, I don't think that the fact pattern that we have here is that Johnson case. Why not? I believe that we are in the Obie case land because in describing the crime that occurred and in asking for the jury not to nullify and asking the jury to set aside these civil arguments and talking about the impact on the community, she was talking about the impact on these four property owners, the two towns, the Heron and the White family who lost their home. I think that she was asking to vindicate their losses, their interests, especially when partnered with the defense counsel's invitation that those individuals should be paying Mr. Harris for the work that he did on those homes. That is what she was asking for when asking for a guilty verdict in this case. She was responding to those arguments and turning it back to the victims. I think there was one statement, we all need protection from him, so to speak. Why is that not similar to the Johnson type? That is probably the closest that we get in this case to the Johnson case. But again, that goes to the issue of whether or not future conduct was raised by the invitation for jury nullification in this case. Because the defense attorney was arguing in a manner that was encouraging the jury to accept this as just a regular course of real estate business in the city of St. Louis, I think that that does bring that comment into the invited response by the defense attorney. Turning to the issue of the valuation in this case, I think it is important to note that the district court did not accept the government's valuation in this case and he lowered the valuation by approximately $10,000. That is 6 or 7 percent of the total value. What was the valuation based on in the record? The valuation that the government was asking for was based off of the Realtor.com estimates. Was there any other evidence submitted by the government? The court reviewed photographs that were taken both before and after photographs from the trial. Those were not presented at the sentencing hearing themselves, but they were presented at the trial and that was within the record and within the district court's memory. The district court also received, again in the trial, testimony about other aspects of the loss. So the victim from the house owned by Shreece White, she testified to the sentimental value that was in the home because she had inherited that home from her mother. Same thing with the Sentimental value is not, is that recoverable? Well, that goes into the formula for what is the fair market value. The fair market value comes from what a willing seller would sell and a owner's sentimental value, what they get out of that house, goes into what they would sell that house for on the fair market. That's not how the market works. The market, because the willing seller could say, I love this house, it's worth a million dollars, but no willing buyer is going to buy it. So if she wants to sell it, she's got to sell it for $100,000 or whatever without the sentimental value. Yes, and when we, when the seller progressed to the point of a give and take of negotiations, there would be some give and take there. Ms. White testified that when she was thinking about selling the house, she thought that she would list the house for approximately $50,000. We didn't ask the district court to adopt that as the value of the house, but that goes into if she had been a willing seller, what she would have been ballparking her house as worth in that case. Is there anything else on sentimental value that's in either the sentencing transcript or the trial transcript? I mean, your brief, I think, refers to some taxes that were paid. Taxes, and there was additionally from one of the homes, a homeowner estimated that they had $7,000 to $10,000 worth of rehab equipment and home renovation equipment that was stolen in the trailer, yes. And I believe one of the other houses, they talk about having materials inside the house that was stolen as well. So which Zillow valuation or website valuation was used, the one at the time of the taking or the transaction or subsequent? I believe that the realestate.com and Zillow values that were submitted were based off of contemporaneous values, so that would have been at the time of the sentencing. Why is that appropriate as opposed to the valuation at the time the property was taken? I think that historical valuations from realtor.com were not available, so the present values were used, but it would be very justified for the court to lower those values to compensate for the fact that there had been some growth in value over the years, and I think that would be one explanation for why the court did decrease it by $10,000. It was a fair reduction, wasn't it? I mean, if you're, you know, over two years, the reduction was approximately $10,000 from the government's request, and apparently then the court didn't consider, if that's correct, did the court consider then upward, you know, increasing it because of the renovations? I mean, it looks like to me this was just a Zillow number reduced by a random amount. Well, I would say that there's only slight evidence in this case about the value of the improvements. The defendant testified at the trial that he put $60,000 into the house, but there's been no other corroboration of that, but the judge looked at the actual photographs. The judge could see the before and the after photos. The judge could make a determination how much he believed those values were increased as a result of the renovations. He does not need to accept the $60,000 value that was testified to by the defendant, especially in a case where there is a factual credibility finding against the defendant because two points were assessed in the PSR for obstruction of justice from the defendant's testimony in this case. So the judge, I think, was in the best position to look at those photographs to assess for himself what he thought the value improvements were in those homes rather than taking the defendant's word for it. I think there's two problems here, quite frankly. One is you used, as the government used, not you. The government used 2018, or excuse me, used 2021 data, as you mentioned to Chief Judge Smith, and not at the time of the crime. And as we know, because of low interest rates, property values did rise considerably. Now, maybe that's in the $10,000 reduction. Maybe it's not, but we don't know because the district court never mentioned the words appreciation or anything like that. The other is that there were improvements made not only to that property of some kind. Maybe they're not as extensive, but there could have also been improvements made to surrounding properties, which could raise property values if you were to gentrify a neighborhood or something like that as well. Why doesn't that create enough doubt that maybe we ought to have the district court do this over again and just explain its reasoning? It may come out the same way, but just explain what it was doing. I think because there is a heavy presumption that the district court did go through this and look at this and come up with a reasonable determination. There may be a presumption, but we still have to have some basis for determining how the court did it and there's just not much here. Can you fill in the gaps for us? Was there some explanation given? Is there something in the record to indicate the methodology? When the judge issued his ruling that the total value was $153,000, there was not an explanation for the $10,000 decrease from what the government believed the value was and what the district court found. The record just does not indicate that. To my knowledge, there was not any discussion outside of the record that you have before you today that explains that. I have not touched on the other two issues here today, but I do believe that the brief speaks for themselves on the ineffective assistance claim. The one issue that I wanted to address on the interstate nexus claim is that there is sufficient evidence of interstate nexus with respect to all three of these properties. One of the properties was owned by a Texas homeowner, so there's clear interstate nexus there. The other two properties were both rented by the defendant after he came into possession of them and there was evidence that he was advertising those rentals online and that he was accepting rental payments through Cash App. And finally, with respect to all three properties, the notary testified that as a result of the Secretary of State investigation into whether these documents had been improperly notarized, she was prevented from working as a notary for a period of time until that investigation had concluded. For all of these reasons, there is sufficient interstate nexus as to all three of the properties underlying all six of the counts and the motion for acquittal was properly denied. Unless there's any other questions from the judges, thank you for your time. I don't see any. Thank you, Mr. Dunkel. The fair market value issue, I think Judge Strauss responded to that in the way that I would like to, which is it's not just about fair market value isn't determined by what a willing seller would sell his property for. There's got to be a buyer also. The notion and what the government did here, even with respect to Realtor.com values, is they didn't do the work of digging to see if they could come up with 2019 Realtor.com valuations. What they really didn't do was get somebody to come in and provide a sound evidentiary basis for what the value of the property was when it was stolen. Mr. Harris brought a witness in to testify about the value of the property. It's not something that's particularly difficult. The government totally punted on that. They just did the easy thing and took a current by the government's concession today. I didn't know this before. They took a current, but my assumption would be they took a 2021 Realtor.com valuation. I would like to touch on the fact that there's a big difference between saying I have a higher burden of proof and saying I have a high burden of proof, but I'm out of time. Thank you, Your Honors. Thank you, Mr. Groves. The Court thanks both counsel for participation in the argument before the Court this morning. We'll take the case under advisement.